IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LINDSEY WHITNEY,

    Plaintiff,

v.                                                                          No. 1:09-cv-1127

THE CITY OF MILAN,
TENNESSEE, and CHRIS
CRIDER in his individual
capacity,

    Defendants.

---

**ORDER GRANTING CHRIS CRIDER'S MOTIONS FOR SUMMARY JUDGMENT
AND TO DISMISS PLAINTIFF'S FREEDOM-OF-ASSEMBLY CLAIM**

---

Before the Court are two motions filed by Defendant, Chris Crider: for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and to dismiss Plaintiff's freedom-of-assembly claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") Nos. 20 and 60.) The Plaintiff, Lindsey Whitney, has responded to the motions (D.E. No. 24), and they are now appropriate for disposition. For the reasons set forth herein, the Court **GRANTS** the motions.

STANDARDS OF REVIEW

A.  <u>Rule 56</u>

Fed. R. Civ. P. 56(c) provides that

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings, but rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; *see also* Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In the Sixth Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

    B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint need not necessarily be pleaded with "detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). Factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .." Id. at 555-56 (citations and alterations omitted). The key inquiry is whether the facts in the complaint set out "a claim to relief that is plausible on its face." Id. at 570; *see also* Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009).

In Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the United States Supreme Court explained that analysis under Rule 12(b)(6) requires a two-pronged approach. First, the reviewing court should determine which allegations in the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion. Iqbal, 129 S. Ct. at 1949. Second, the court should evaluate the remaining portions of the complaint—i.e. the well-pleaded facts—and ascertain whether they give rise to a "plausible suggestion" of a claim. Id. at 1950. The court "must accept as true all of the factual allegations contained in the complaint," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Twombly, 550 U.S. at 556 (citations omitted). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citation omitted).

## FACTUAL BACKGROUND

Plaintiff, Lindsey Whitney ("Whitney"), is a resident of Gibson County, Tennessee. (D.E. No. 23, Amended Complaint, ¶ 3.) Defendant, City of Milan (the "City"), is an incorporated municipality located in Gibson County, and Defendant Chris Crider ("Crider") is the Mayor of the City of Milan and is a resident of Gibson County. (Id. at ¶¶ 4-5.) Whitney began working for the City in October of 2006, initially in the Milan Street Department. (Id. at ¶ 6.) In 2007, Plaintiff began training with Keri Williams ("Williams"), who at that time was the Milan City Recorder. (Id. at ¶ 7.) When a position opened up in the City Court Clerk's office, Plaintiff sought the job with Williams's recommendation. (Id. at ¶¶ 9-10.) However, Crider awarded the position to his aunt, Donna Jackson, which Plaintiff claims was a violation of the City's nepotism policy. (Id.) Subsequently, another clerk position became available, and Williams once again recommended Whitney for the job. (Id. at ¶ 11.) Crider eventually awarded Plaintiff this position after "several months" of equivocating as to whether he would experience problems from the fact that her husband was a police officer for the City of Milan. Plaintiff drew this conclusion because she presumed Crider would feel compelled to "walk on egg shells in his own office" for fear of having Plaintiff report details of inappropriate or unsavory activities to her husband. (Id. at ¶¶ 11-14.)

Whitney contends she performed her job well, receiving no evaluations or reprimands from her superiors. (Id. at ¶ 17.) In September of 2008, Crider terminated Keri Williams from her

position as City Recorder, and as a result, she filed suit against the City and the Mayor.[1] (Id. at ¶¶ 19, 28.) Crider instructed all of his employees, including Whitney, that they were not to assist Williams with her lawsuit, or communicate with her in any way during the pendency of her litigation, which Plaintiff claimed was difficult because Williams was both her friend and landlord. (Id. at ¶¶ 20-27.)

Plaintiff also avers that during her employment at City Hall, Crider on several occasions made "unwelcome and offensive sexual comments" to her. (Id. at ¶ 32.) She reported these incidents to Police Chief Tim Wright, who advised her to "attempt to capture these comments on a recorder." (Id. at ¶ 34.) Shortly after one of Crider's assistants found the recorder in Whitney's desk, she was transferred away from City Hall to work for the City of Milan Fire Chief, James Fountain, which action Plaintiff considered to be a "demotion," even though she continued to receive the same salary. (Id. at ¶¶ 36-41.) Moreover, since the time of her transfer, Whitney contends that she has ceased receiving fuel reimbursements, and that Crider has banned her from City Hall. (Id. at ¶ 43.)

As a result of these actions, Plaintiff maintains the Mayor violated several of her constitutional rights, including: her right to intimate association under the First and Fourteenth Amendments; her rights to travel, freedom of movement, and access under the Fourteenth Amendment's Due Process Clause; and her rights to freedom of speech and assembly under the First Amendment. (Id. at ¶¶ 59-64.)[2]

---

[1] Keri Williams's lawsuit also was before this Court. See Williams v. City of Milan et al., Docket No. 1:08-cv-1235. In an Order entered on September 15, 2009, the Court dismissed Williams's federal claim and, in turn, declined to retain jurisdiction over her state-law assertions. Williams v. City of Milan et al., 654 F. Supp. 2d 760 (W.D. Tenn. 2009).

[2] Plaintiff also has claimed a violation of the Tennessee Human Rights Act ("THRA") against the City, but as the Court noted in a previous order, she did not assert such a claim against Crider. (D.E. No. 102, Order Denying Plaintiff's Motion to File Second Amended Complaint.)

ANALYSIS

<u>Section 1983</u>

Section 1983 imposes civil liability on every person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" causes the "deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. To prevail on such a claim, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." <u>Wittstock v. Mark A. Van Sile, Inc.</u>, 330 F.3d 899, 902 (6th Cir. 2003) (citation omitted). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." <u>Humes v. Gilless</u>, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." <u>Chapman v. City of Detroit</u>, 808 F.2d 459, 465 (6th Cir. 1986).

A. <u>Intimate Association</u>

The United States Supreme Court has held "that 'certain kinds of personal bonds . . .' and "certain [kinds of] intimate conduct . . .' are protected by the substantive component of the Due Process Clause." <u>Flaskamp v. Dearborn Public Schools</u>, 385 F.3d 935, 942 (6th Cir. 2004) (quoting <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984) and <u>Lawrence v. Texas</u>, 539 U.S. 558, 562, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003)) (alterations in original). "[C]hoices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such

relationships in safeguarding the individual freedom that is central to our constitutional scheme." Roberts, 468 U.S. at 617-18. A person's right to intimate association "is not limited to familial relationships but includes relationships characterized by 'relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.' " Flaskamp, 385 F.3d at 942 (quoting Roberts, 468 U.S. at 620).

In this case, it was Crider's mandate that Whitney cease all communication with Keri Williams that she alleges infringed on her right to intimate association. (D.E. Nos. 23, Amended Complaint, ¶ 61; 24, Response to MSJ, pp. 4-7.) Citing Akers v. McGinnis, 352 F.3d 1030, 1039-40 (6th Cir. 2003) ("Personal friendship is protected as an intimate association"), Plaintiff avers that when the Mayor barred her from communicating with her friend and landlord, he violated her constitutional rights. However, even accepting as accurate Whitney's claims that Crider's conduct interfered with her right to intimate association, she nevertheless cannot prevail on this claim because it does not rise to the level of a constitutional violation.

"[N]ot all government action affecting the right to intimate association receives heightened scrutiny." Flaskamp, 385 F.3d 942. Only "[g]overnment action that has a 'direct and substantial influence' on intimate association receives heightened review." Beecham v. Henderson County, Tennessee, 422 F.3d 372, 376 (6th Cir. 2005) (quoting Anderson v. City of LaVergne, 371 F.3d 879, 882 (6th Cir. 2004)). The Sixth Circuit explained further:

> Government action is deemed to have "direct and substantial" burdens on intimate association "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]."

Beecham, 422 F.3d at 376 (citing Anderson, 317 F.3d at 882) (alterations in original). "Lesser intrusions—those that are not direct and substantial—receive rational-basis review." Flaskamp, 385 F.3d at 942 (citation omitted). Thus, to trigger anything other than rational-basis scrutiny, the government action of which a plaintiff complains must have a "direct and substantial" effect on her right to intimate association, such that she effectively is foreclosed from engaging in all relationships of that type. *See, e.g.*, Beecham, 422 F.3d at 378-79 (rational-basis review was appropriate in the case of a county employee who was terminated for her involvement in a romantic relationship with the spouse of another county employee, despite the absence of an actual marriage or an express anti-nepotism policy: "In this case, [Beecham's] termination did not bar her from every form of employment in every sector of society. She was discharged from one position at one courthouse"); Flaskamp, 385 F.3d at 943 (teacher who was denied tenure based upon relationship with former student did not suffer "direct and substantial" restraint on her right to form relationships: "[e]ven if we were to treat the board's action as amounting to a ban on relationships between teachers and their students for, say, one year after graduation, teachers would still be able to date a wide range of adults of a wide range of ages"); Vaughn v. Lawrenceburg Power Sys., 269 F.3d 703, 712 (6th Cir. 2001) (municipality's anti-nepotism policy "did not bar [the plaintiffs] from getting married, nor did it prevent them [from] marrying a large population even in Lawrence County").

In light of the reasoning from the Sixth Circuit's prior decisions, it is easy to see that any restriction Crider imposed on Whitney's right to intimate association was not "direct and substantial." At most, she has alleged that Crider prevented her from having a friendship with Keri Williams. However, because Williams is but one person, Crider's mandate leaves Plaintiff

8

free to befriend any other person in Milan, Gibson County, or elsewhere. Thus, the Court will apply rational-basis scrutiny to her claim.

Rational-basis review is satisfied "so long as there is a plausible policy reason" for the government action. Fitzgerald v. Racing Ass'n of Central Iowa, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003) (quoting Nordlinger v. Hahn, 505 U.S. 1, 11-12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)). "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." U.S. v. Lopez, 514 U.S. 549, 613, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995) (citations and quotation marks omitted). In this case, there are multiple plausible reasons why Crider could have chosen to forbid Whitney from associating or communicating with Williams.

First, because Williams was suing the City of Milan and Crider, Crider was concerned that the current City employees, if they had contact with Williams, would be "promoting" her behavior. (D.E. No. 20-1, MSJ, p. 9.) Employees such as Whitney who apparently had frequent interactions with Crider potentially could have been privy to confidential information about Crider's and the City's plans for defending against Williams's lawsuit. As a result, barring employees from communicating with her would be a reasonable means of obviating such a problem. Second, Crider was concerned that Williams's negative attitude towards the City and him would create an unpleasant working environment: "the City did not want its current employee [sic] involved in what it feared might be a disgruntled former employee's disruptive behavior."  (D.E. No. 20-1, MSJ, p. 9.) Moreover, it is entirely plausible that Crider and the City feared that employees' continued fraternization with an unhappy, discharged employee could lead to divided loyalties or further legal trouble. The point is not whether any of these reasons was the actual motivation behind Crider's order that Whitney not contact Williams; instead, what

9

is important is that there are several rational reasons that he could have chosen to do so. As a result, the Court concludes that Crider's actions satisfy a rational-basis review, and thus, Whitney can prove no set of facts to support her claim that he violated her right to intimate association.

   B. <u>Right to Travel, Right to Freedom of Movement, Right to Access, and Right to Freedom of Assembly</u>

Plaintiff also contends that the Mayor violated several of her constitutional rights based solely upon the fact that he allegedly "banned" her from Milan City Hall. (D.E. No. 23, Amended Complaint, ¶¶ 59-64.) Specifically, Whitney avers that Crider "ordered that Plaintiff may not ever come into City Hall again," which "constitute[d] deliberate indifference to Plaintiff's right of access and entry to City Hall, thus violating her liberty interests, right to local travel on public spaces, right to freedom of movement, and right to access guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (<u>Id</u>. at ¶¶ 43, 59.) Further, she maintains that "Mayor Crider's deprivation of Plaintiff's right to . . . attend events at City Hall deprived Plaintiff of her civil rights under color of law and entitle her to relief . . ." because he has violated her right to freedom of assembly. (<u>Id</u>. at ¶ 60.) However, the record makes clear that Whitney was not injured by Crider's alleged ban—even if she could prove the existence of such a ban.

The entire basis for Plaintiff's claim that Crider barred her from City Hall derives from remarks that her boss, Milan Fire Chief, James Fountain, allegedly made to her after she started working for him. In her affidavit, Whitney contends that during her first weeks at the Fire Department, Fountain routinely sent her to City Hall on errands. (D.E. No. 24-1, Whitney

10

Affidavit, ¶ 12.) However, she asserts that some time later,[3] Fountain told her that "Crider was no longer allowing" her to come to City Hall. (Id. at ¶¶ 14, 16.) She also avers that Fountain has since made comments and jokes about the fact that Crider forbade her to come to City Hall. (Id. at ¶¶ 17-18.) Whitney also makes other allegations about events at City Hall to which she supposedly was not invited. (Id. at ¶¶ 20-21.)

In response to these contentions, Crider argues that far from being "banned," Whitney has been to City Hall on several occasions since he allegedly forbade her to enter the building. (D.E. No. 36, Crider's Reply, pp. 3-7.) Plaintiff does not dispute this, admitting that "[i]n the nine months since Mayor Crider's ban, Mrs. Whitney has been at City Hall on four occasions. . . ." (D.E. No. 46, Whitney's Sur-Reply, p. 2.) However, she insists that this should not diminish the import of Crider's "ban," because she only went to City Hall on these four occasions out of "job necessity," and each time, she "fear[ed] that in doing [so], she would be terminated by Mayor Crider for violating his ban." (Id. at pp. 2-3.) Nevertheless, Whitney was not terminated, nor indeed is there any evidence she has suffered any adverse consequences as a result of her visits to City Hall. Thus, such a ban, even if the Court accepts its existence as true, has not injured the Plaintiff. She was not prevented from entering City Hall when she tried to do so, nor has she experienced any repercussions from her visits to the building. As a result, Crider is entitled to summary judgment on all of Whitney's claims that stem from her contention that he allegedly barred her from City Hall.

---

[3] The timeline of these events is unclear, because Whitney's affidavit and her other pleadings make somewhat contradictory assertions with regard to the chronology. For example, she says that "during [her] first several weeks at the Fire Department," she went to City Hall daily, but then recalls that "[d]uring this same several weeks," Crider denied her the opportunity to come to City Hall to do part-time work for the new City Recorder. (D.E. No. 24-1, Whitney Affidavit, ¶¶ 12-13.) She then states that "after" Crider denied the City Recorder's request to work with Whitney, Fountain "explained to [her] that Crider was no longer allowing [her] to come to City Hall." (Id. at ¶ 14.)

11

Furthermore, as Defendant correctly asserts, all of Whitney's knowledge about the ban comes from words and actions of people other than Mayor Crider himself. (D.E. No. 36, Crider's Reply, p. 6) (quotation marks and alterations omitted). The extent of Plaintiff's proof regarding the ban is a series of statements from Fountain, but she has presented no evidence that Crider ever personally communicated this ban to her, or that anyone other than Fountain mentioned it. Plaintiff seems to be arguing that Crider was attempting to keep this ban a secret, going so far as to decline to notify her of it or enforce it. Thus, the Court is doubtful that Plaintiff could even establish the existence of the ban, let alone that she was injured by it, as noted *supra*. In any event, because Whitney cannot prove any set of facts that would entitle her to relief under these claims, Crider is entitled to summary judgment on all of them.

C.  First Amendment Retaliation

Whitney also contends that Crider's actions constituted a deprivation of her right to freedom of speech under the First Amendment. (D.E. No. 23, Amended Complaint, ¶ 60.)[4] When, as here, a plaintiff alleges that a government official has retaliated against her for exercising her First Amendment rights, the second element of the Section 1983 prima facie case—that the deprivation was caused by a person acting under color of state law—is further broken down into three sub-elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." Meizbov v. Allen, 411 F.3d 712, 717 (6th Cir. 2005) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

---

[4] Plaintiff, in her complaint, also claims that Crider's actions constituted a prior restraint on her speech. (D.E. No. 23, Amended Complaint, ¶ 62.) In his motion, Crider acknowledges that Whitney has asserted this cause of action, but he does not address it further or argue that he is entitled to summary judgment. (D.E. No. 20-1, MSJ, p. 2.) Therefore, the Court will not address it.

The exact nature of Whitney's claim under the First Amendment is unclear, because she does not explain the ways in which Crider has violated her freedom of speech. In her response to Crider's motion, she does not address his assertions regarding this claim.[5] However, the Court will assume, as Crider did in his motion, that Plaintiff is attempting to argue that he retaliated against her for exercising her First Amendment rights. Because she does not specify, the Court can only speculate that she is claiming that the deposition she gave as part of Keri Williams's lawsuit constituted protected speech.[6] The Court nonetheless will assume that such testimony would qualify as protected speech, thus satisfying the first sub-element of her First Amendment retaliation claim. She cannot succeed with this claim, however, because she has not demonstrated that she suffered an adverse employment action.

The term "adverse action" traditionally has referred "to actions such as 'discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote.' " Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 724 (6th Cir. 2010) (quoting Thaddeus-X, 175 F.3d at 396)). "[I]t is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening the most trivial of actions from constitutional cognizance." Thaddeus-X, 175 F.3d at 398. "Employment actions qualifying as materially adverse include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities,

---

[5] In her response, Whitney goes into some detail about how she believes Crider retaliated against her, but all of these assertions are in connection with her claim under the THRA, involving citations to Tennessee case law and standards that apply specifically to the state statute. (D.E. No. 24, Response to MSJ, pp. 10-16.) She makes no attempt to convert these assertions into a refutation of Crider's arguments against her First Amendment claim.

[6] The Court assumes this is the allegedly protected speech because her affidavit repeatedly references "her deposition testimony" as a line of demarcation between what she considers to have been acceptable and unacceptable working conditions. (D.E. No. 24-1, Whitney Affidavit, ¶¶ 24-28.) Moreover, it is unclear how any of her other conduct could qualify as protected. Defendant presumes that the presence of the recorder in her desk is her allegedly protected conduct, but Whitney makes no attempt to justify such an assertion; indeed, she has not attempted to argue that *any* of her conduct was protected, apart from her references to changes in her working environment after her deposition. However, because she cannot prove that she suffered an adverse employment action, it is immaterial whether she has satisfactorily pled that she engaged in protected conduct.

or other indices that might be unique to a particular situation.' " Adair v. Charter County of Wayne, 452 F.3d 482, 490 (6th Cir. 2006) (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 887 (1996)). "Mere inconvenience or an alteration of job responsibilities" does not rise to the level of a materially adverse employment action. Adair, 452 F.3d at 490 (citations omitted).

In this case, none of the conduct of which Plaintiff complains constitutes a materially adverse employment action. She has not been terminated. She admits that her wages are the same as they were before her allegedly protected conduct.[7] (D.E. No. 20-2, Whitney Deposition, p. 64.) She has not asserted that her job title changed after her deposition. Moreover, other than her conclusory opinion that her transfer to the fire department constituted a "demotion," Whitney has submitted no proof of a significant, material change in her job responsibilities since her allegedly protected conduct. (D.E. No. 23, Amended Complaint, ¶ 43.) In her affidavit, Plaintiff contends that her "job responsibilities have been drastically reduced," because prior to her deposition, she was performing secretarial duties, but now performs fewer of them and is not allowed to read emails between Fountain and City Hall (although there is no indication that she was permitted to do so prior to her deposition). (D.E. No. 24-1, Whitney Affidavit, ¶ 27.) She further maintains that her "public exposure has been drastically reduced," but it is unclear how much public exposure she ever had in her position previously. (Id. at ¶ 28.)

---

[7] Plaintiff contends that after her deposition testimony, her workday was changed from 8:00-4:00 to 8:00-4:30, thus insinuating that she was working an extra thirty minutes per day for the same salary. (D.E. No. 24-1, Whitney Affidavit, ¶¶ 24-25.) However, she omits crucial details surrounding the change in her hours: when she worked at City Hall, her hours were also 8:00-4:30, and in response to her assertion in her deposition that she was working thirty fewer minutes per day after her transfer to the fire department, her schedule was changed back to 8:00-4:30 to preclude any claim that her hours or job responsibilities had been reduced. Thus, although Plaintiff worked 8:00-4:00 for her first two months at the fire department, the change in her schedule to 8:00-4:30 was simply a corrective response to her assertion that she was working thirty fewer minutes per day. (D.E. No. 20-2, Whitney Deposition, p. 64.) Her salary did not change throughout this period of schedule correction. (Id.) Thus, the Court finds Whitney's assertion that she was forced to work an extra thirty minutes per day to be inaccurate and misleading.

However, she fails to specify any concrete ways in which her job responsibilities actually changed. To survive summary judgment, she must allege "*significantly diminished material responsibilities*." Adair, 452 F.3d at 490 (citation and quotation marks omitted) (emphasis added). There is no evidence in the record describing her job duties prior to her allegedly protected speech, or how they are different afterwards. Her conclusory allegations and nebulous assertions that she is no longer allowed to perform "many" of her job responsibilities are simply insufficient as a matter of law to survive summary judgment. Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted) ("Conclusory assertions, supported only by [Plaintiff's] own opinions, cannot withstand a motion for summary judgment"). At the summary judgment stage, the nonmoving party must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. A mere denial of the moving party's assertions does not create a genuine issue of material fact. Matsushita, 475 U.S. at 586.

Finally, Plaintiff cannot prove that she has suffered a materially adverse change in her benefits since her allegedly protected speech. She contends that she has, noting the fact that her "gas mileage benefit was terminated" when she was transferred to the fire department. (D.E. No. 24-1, Whitney Affidavit, ¶ 29.) However, she admits that she is now allowed to drive a city vehicle during working hours. (Id.) She nevertheless maintains that this constitutes a loss of benefits because "if that vehicle is in use or broken down," or "if [she] is required to sign warrants after working hours," she must drive her own vehicle "for which [she] is not compensated." (Id.) This argument is unavailing. Crider notes that Whitney is paid an extra $150.00 per month to compensate her for the duty of signing warrants—a claim Plaintiff does not dispute. (D.E. No. 36, Crider's Reply, p. 7.) Therefore, it appears that Whitney's salary already factors in the added inconvenience that stems from her extra duties, perhaps including

any mileage she accrues on her personal vehicle. More importantly, despite all of Whitney's protestations about potential scenarios in which she would be forced to drive her own car, there is no indication that any of these contingencies ever has arisen, and as a result, the extent to which Whitney has been damaged is nothing more than speculative.

Thus, there is no evidence that Plaintiff has suffered a materially adverse employment action, even assuming that she engaged in protected conduct. Because she does not respond to Crider's arguments to the contrary, and because her First Amendment claim was ill-defined at best, the Court has determined that she can prove no set of facts that would entitle her to relief. As a result, Crider is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons articulated herein, Crider's motion for summary judgment as to Plaintiff's First Amendment retaliation and intimate association claims and her claims arising under the right to travel, right to freedom of movement, and right to access is **GRANTED**. Further, his motion to dismiss Plaintiff's freedom-of-assembly claim is **GRANTED**.

**IT IS SO ORDERED** this, the 6th day of July, 2010.

s/J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE